Allan L. BLAIR and Jocelyn Blair,
Petitioners-Appellants,

v.

COMMISSIONER OF INTERNAL
REVENUE, Respondent-Appellee.

No. 75–1728.

United States Court of Appeals,
Seventh Circuit.

Argued Jan. 14, 1976.

Decided July 12, 1976.

Milton A. Levenfeld, Donald A. Statland, Chicago, Ill., for petitioners-appellants.

Scott P. Crampton, Asst. Atty. Gen., Carleton D. Powell, Atty., Tax Div., Dept. of Justice, Washington, D. C., for respondent-appellee.

Before PELL and SPRECHER, Circuit Judges, and PARSONS, Chief District Judge.*

PELL, Circuit Judge.

In this appeal the petitioners contend that the United States Tax Court erroneously disallowed their income tax deduction for the year 1968 and determined a deficiency for that year. The facts of this litigation are set forth in detail in the Tax Court opinion, 63 T.C. 214 (1974), and the supplemental opinion of that court, 63 T.C. 744 (1975), and need not be similarly repeated here. There was no substantial dispute as to the dispositive facts which are as follows.

On July 14, 1965, the University of Illinois filed a petition in the state court for

* Chief Judge James B. Parsons of the United States District Court for the Northern District of Illinois is sitting by designation.

condemnation of a lot (lot 22) in Urbana, Illinois. Named in the petition were the record owners, the first and second mortgagees, the holder of a deed of trust, and various tenants. A lis pendens notice was simultaneously recorded.

Some of the real estate taxes assessed against lot 22 for 1964 had not been paid and became delinquent in 1965. On October 13, 1965, the lot was sold at public auction by the county collector to the assignor of the petitioner, Allan Blair.[1] The assignor paid the unpaid taxes to the collector and received a certificate of purchase.

On June 30, 1966, judgment was entered in the condemnation proceedings granting the university's petition and valuing the property at $62,000.00. The university deposited this amount with the county treasurer. On July 18, 1966, the state court entered an order in the condemnation proceeding directing the disbursement of the condemnation award to the mortgagees in the approximate amount of $37,000.00, to the county collector for the 1965 real estate taxes and a pro rata share of 1966 real estate taxes, and to the record owners the balance of the proceeds. There was no reference to the 1964 taxes which had been the basis of the tax sale.

In April of 1968 proceedings were initiated by the purchaser of the certificate of purchase to secure a tax deed if no redemption was accomplished by the end of the redemption period, August 26, 1968. On the latter date the certificate was transferred to Blair with the payment therefor being $630.97. Initially, the state court indicated that Blair would be entitled to a tax deed. Blair, however, was unable to locate the certificate of purchase which by statute was required to be produced to obtain the tax deed. Blair sought to have an order issued dispensing with the necessity of tendering the certificate. Upon the advice of the state's attorney the matter was continued, and the order pertaining to the issuance of a tax deed was vacated.

On October 22, 1968, the university, apparently finally realizing they were not through with lot 22 litigation, filed objections to the issuance of the tax deed, asserting that any rights Blair had as a result of his certificate of purchase, which apparently still was among the missing, related solely to the funds which it had paid to the county treasurer and not to the land itself.

Within two days thereafter, an agreement was reached whereby Blair, an alumnus of the university, agreed to deed lot 22 to the university if that institution would withdraw its objections. At a hearing on October 24, the state court on the understanding that the petitioner would immediately transfer lot 22 to the university, entered an order directing the county clerk to issue the tax deed to Blair. The lot was deeded to the university pursuant to the agreement. The fair market value of lot 22 was not less than $61,000.00, and petitioners in their 1968 income tax return claimed a charitable contribution in the amount of $61,000.00. The Tax Court permitted a charitable deduction in the amount of $630.97. This appeal followed.

The Illinois Revised Statutes pertaining to the matter of tax liens, tax sales, redemption from tax sales and allied subjects present a Hyrcanian wood, which the record and the reported cases indicate have been traversed with considerable expertise by the petitioner, but which have assumed tangled proportions by apparent legislative efforts from time to time to reconcile the conflicts between the desire to assure efficient tax collection on the one hand and to avoid, on the other hand, unfair forfeiture of valuable property rights for a relatively paltry amount without affording a reasonable amount of due process for the delinquent owner.

We find it unnecessary, however, to follow all of the skeins to their ends since, in our opinion, the Illinois Supreme Court speaking through Justice Schaefer in *Delano, Inc. v. Arnold,* 46 Ill.2d 498, 263 N.E.2d 830 (1970), has provided us with guidelines

---

1. The purchaser was Interstate Bond Company with whom Blair had had frequent business dealings in the past and for whom he had performed legal services.

substantially dispositive of the issue before us. We are not unmindful that the Tax Court reached and disposed of other issues; however, because of law which we find applicable we do not need to pass upon each ground of the lower court's decision. Suffice it to say that we think that court reached the correct result. In considering the question before us we are taking as unquestioned the fact that on the date of the filing of the petition for condemnation the real estate taxes on lot 22 were delinquent and constituted a lien on that property.

In *Delano,* a case of first impression in the Illinois Supreme Court, the property was ordered sold for nonpayment of real estate taxes in 1963 and was purchased in June 1966, pursuant to the Revenue Act of Illinois. The eminent domain petition was not filed until May of 1968. In contrast, in the case before us the tax sale did not occur until several months after the condemnation petition had been filed and the lis pendens notice recorded. At no time did Blair or his predecessor take any steps to intervene in the eminent domain litigation as to which they at least had constructive notice.

Returning to *Delano,* we note that judgment was entered in the eminent domain proceedings in September 1968, and the amount of the judgment was promptly deposited. The period of redemption on the tax sale expired the following October. The circuit court dismissed the tax purchaser's application for a tax deed under the statute and directed that the amount necessary to redeem be disbursed to the tax purchaser from the condemnation fund on deposit. The tax purchaser, relying upon Ill.Rev.Stat.1965, ch. 120, par. 747, argued that, there having been no redemption, it was mandatory because of the statutory "shall" that the deed be issued which would then pass title to any eminent domain reward standing as a substitute for the property. In the case before us, the deed, of course, was executed and delivered although with. the agreement implicitly indicating that the grantee was nothing more

than a conduit for passing whatever claim he might have to the university. While he, on this appeal, would have us treat it as the passage of title we regard this as nothing more than the elimination of a questionable title cloud.

Justice Schaefer's language is clear and explicit in this respect:

After an eminent domain proceeding has been completed and the award deposited with the county treasurer it is impossible for a tax deed to convey merchantable·title. It is also impossible for the tax purchaser or his assignee to be put in possession of the property. The completion of the eminent domain proceeding thus of necessity terminates the right of the tax buyer to receive a tax deed. (See *Chicago Land Clearance Comm. v. Narodski,* 57 Ill.App.2d 302, 305 n. 2, 207 N.E.2d 81.) Similarly, the completion of the eminent domain proceeding makes it impossible for the owner of the tax delinquent property to effect a redemption from the tax sale in the manner contemplated by the statute. The statute contemplates that a redemption from the sale will free the property from the lien of the tax sale certificate and restore to him the title which he previously had.

It is therefore clear that the decision of the trial court which returned to the tax purchaser the amount to which he was entitled, but dismissed his petition for a deed, was correct under the law as it existed when the order appealed from was entered. [263 N.E.2d at·831.]

In the present case, the appellant contends that the Tax Court's reliance upon *Delano* is misplaced because in that case all necessary parties were joined, including the tax purchaser, whereas in the present case the county collector, a necessary party, was not joined in the condemnation proceedings. The Tax Court devoted extended attention to the matter of whether the state or the county was really collecting the real estate taxes, whether the county collector was acting as agent for the state, and sovereign immunity questions ancillary to the first two questions, all in turn bearing upon the

necessity of the county collector being made a party as to its tax lien.[2] We do not need to pursue questions of whether it was the state or the county which was collecting the taxes. We find no basis for concluding that the county collector is a necessary party in condemnation litigation even assuming arguendo that sovereign immunity does not preclude him from being made a party. While there is a conflict of authority, and even though the holder of a tax lien or a tax title may properly be joined in a condemnation proceeding, it is generally held that such a person does not have an interest which makes him a necessary party to a proceeding in eminent domain. 2 Nichols' The Law of Eminent Domain § 5.744, at 5–217 et seq. (Rev. Third Ed.1975).

■ The more significant aspect of the present matter is that it really makes no difference whether the county collector was made a party. It is true that a person having an interest in property is ordinarily not bound by litigation in which he has not been made a party. Thus, in eminent domain suits, one with an ownership interest who has not been made a party would not be deemed to have lost his right to contest the exercise of the condemnation power. Likewise, a lien holder not made a party should not be bound by a determination in the condemnation proceeding of the amount of his lien. What is involved here is whether the right to a tax deed after the period of redemption has expired is extinguished when the condemnation judgment has been entered prior thereto. Delano makes it clear that in Illinois this is the case, and it obviously is the case whether the tax claimant is (as he was in Delano) or is not a party. The language of Justice Schaefer for the Illinois Supreme Court permits no other construction: "After an eminent domain proceeding has been completed and the award deposited with the county treasurer it is impossible for a tax deed to convey merchantable title." 263 N.E.2d at 831. (Emphasis supplied.)

The impossibility of their being any remaining vitality in the tax sale insofar as securing a deed or indeed insofar as securing other than the amount necessary for redemption is stated by way of ultimate result in Delano. Other states which are in accord with the result give us some additional rationale as to how the result is reached. In the Matter of the County of Nassau, 24 N.Y.2d 621, 301 N.Y.S.2d 564, 249 N.E.2d 426 (1969), involved the situation of a purchaser at a tax sale who obtained a title deed subsequent to a condemnation. The following extract, id., 301 N.Y.S.2d at 567, 249 N.E.2d at 428, is applicable to the present case:

Nassau County acquired title to the property in this condemnation proceeding before expiration of the statutory redemption period. On the vesting date, appellants did not have title, but only a tax lien on the land. Condemnation vested full title in the condemnor, and extinguished all lien interests in the property taken.

\* \* \* \* \* \*

Appellants' tax lien was, therefore, extinguished by the taking of the subject property in eminent domain, but substituted in its place was an equitable lien on the proceeds of the condemnation award to the extent of the tax lien and interest thereon.

\* \* \* \* \* \*

Appellants may assert their equitable lien when the condemnation award is apportioned (see Nassau County Administrative Code, § 11–64.0). The tax sale deed which appellants obtained from the Village of Freeport is invalid since title vested in Nassau County by condemnation before expiration of the statutory redemption period and while the tax was only a lien. [Citations omitted.]

Thus in the present case if the tax sale had not been conducted, the county collector's tax lien would have been extinguished

**2.** Of course, Blair does not argue here that his predecessor should have been made a party as it had no interest whatsoever at the time the

petition for condemnation was filed, and as previously noted, it did not later avail itself of the opportunity for intervention.

by the consummation of the eminent domain proceedings with the substitution in its place of an equitable lien against the proceeds. This result would have followed irrespective of whether the county collector was technically made a party in the condemnation suit. Indeed, when the fund on deposit was distributed payments were made from the fund to the county collector for real estate taxes on lot 22 for 1965 and part of 1966.[3] Blair having stepped into the shoes of the county collector by his purchase stands in no better but also in no worse position as he also was entitled to the equitable lien against the condemnation award fund.

If the matter had not been terminated as it was by the conveyance pursuant to the agreement between Blair and the university, we do not believe Blair would have been without remedy to recover the amount which would have been involved for redemption. In *Southworth v. Department of Highways,* 176 Colo. 82, 489 P.2d 204 (1971), although all general taxes had been paid, a public improvement assessment which was a lien upon the condemned property was apparently overlooked in the distribution of the fund. There, as here, the landowner withdrew the balance of the fund. The Colorado Supreme Court held that having done so, the landowner was personally liable for the amount of the assessment lien. We would see no reason for this result not to have been applicable in the present case had Blair not otherwise participated in bringing the matter to a close whereby he was given credit via the

charitable donation for the amount of his actual investment, *i. e.,* $630.97.[4]

Finally, we note, although we rest our decision on the reasons hereinbefore set out, that the tax deed which the state court authorized pursuant to the agreement was not in compliance with the statute, Ill.Rev. Stat. ch. 120, par. 747, which requires the production of the certificate of purchase, which Blair was unable to do.

In sum, the purported tax deed was invalid, and the Blair deed to the university served to extinguish the equitable lien which came into existence upon the consummation of the eminent domain proceedings. Accordingly, the judgment of the Tax Court is

AFFIRMED.

---

**3.** We express no opinion, as the issue is not involved here, as to whether the county collector's zeal caused him to collect more than that to which he was entitled since under Illinois law the condemnor's title relates back to the date the petition for condemnation was filed, here July 14, 1965. *Board of Junior College, District 504 v. Carey,* 43 Ill.2d 82, 250 N.E.2d 644 (1969); *City of Chicago v. R. R. Bldg. Corp.,* 24 Ill.2d 20, 179 N.E.2d 623 (1962). This litigation would in all probability not have occurred if the county collector had displayed equal zeal in bringing to the attention of the court handling the condemnation suit that his records reflected an outstanding tax purchase

certificate which would be subject to redemption.

**4.** In his brief in this court, Blair argues that the Tax Court decision by its own terms was inconsistent because if the tax deed given him were void, no charitable deduction in any amount whatsoever should have been permitted. As pointed out in the text of this opinion, it appears to us that since Blair could have pursued the landowner for the amount of $630.97, the Tax Court did not err in allowing this amount for the charitable donation. The Commissioner did not cross-appeal this allowance.