SUZANNE SCHATZ, formerly SUZANNE GANS, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent; ROBERT I. and SUSAN J. GANS, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Schatz v. Commissioner
Docket Nos. 396-79, 693-79
United States Tax Court
T.C. Memo 1981-341; 1981 Tax Ct. Memo LEXIS 404; 42 T.C.M. (CCH) 292; T.C.M. (RIA) 81341; June 30, 1981
Harold Helper, for the petitioner in docket No. 396-79. Ted M. Gans and Delmer C. Gowing, III, for the petitioners in Docket No. 693-79. Beth L. Williams, for the respondent. HALL MEMORANDUM FINDINGS OF FACT AND OPINION HALL, Judge: Respondent determined the following deficiencies in petitioners' income taxes: Petitioners
Docket No.
Year
Deficiency
Suzanne Schatz,
396-79
1975
$ 896
formerly
1976
4,245
Suzanne Gans
Robert I. and
693-79
1974
$ 7,530
Susan J. Gans
1975
8,750
1976
8,700
The issues for decision in these consolidated cases are: (1) whether certain amounts paid by Robert I. Gans to Suzanne Schatz are includible in Schatz' income under section 71[1] and deductible from Gans' income under section 215; and (2) whether Schatz is entitled to an earned income credit in 1976 under section 43(a). *407 FINDINGS OF FACT Some of the facts have been stipulated and are found accordingly. Petitioner Suzanne Schatz resided in West Bloomfield, Michigan, when she filed her petition. Petitioners Robert I. Gans ("Gans") and Susan J. Gans, [2] husband and wife, resided in Bloomfield Hills, Michigan, at the time they filed their petition. Schatz and Gans were married on June 13, 1954, and divorced on August 31, 1973. Petitioners were the parents of two children, Lisa and David, both of whom were minors at the time of petitioners' divorce. During the divorce proceedings and during all negotiations leading up to a final agreement between the parties, both petitioners were represented by counsel. John H. Shepherd represented Gans and Hanley W. Gurwin represented Schatz. Both Shepherd and Gurwin had practiced law for many years prior to their involvement in this divorce, and both were experienced in divorce matters. On February 7, 1973, the Circuit Court for the County of Oakland, State of Michigan, (the "Circuit Court") entered an Order for Temporary Relief setting out *408 petitioners' rights and obligations during the divorce action. Among other things, the order directed Gans to pay all reasonable and necessary household expenses which he had paid prior to the commencement of the divorce action, all reasonable and necessary expenses of their minor children, and $ 200 per week to Schatz (out of which she was to pay for food, except milk and meat, and maid services). During negotiations Shepherd initially took the position that the marital property should be divided equally between the petitioners. Gurwin, however, proposed that instead of allocating half of the property directly to Schatz, an amount in excess of half should be paid to her over a period of time. Gurwin felt this was appropriate because Schatz would not be receiving alimony. Further, Gurwin felt it important to provide Schatz with a flow of money over a period of years until she became self-supporting. Gurwin wanted the payments classified as either property settlement or alimony in gross, not alimony, because in Michigan alimony is generally subject to termination on remarriage or death of either party. Negotiations between the parties and their attorneys culminated in a meeting *409 on August 21, 1973, which took place in a jury room at the courthouse shortly before the parties appeared before the Circuit Court. At this meeting the parties agreed that Schatz would not receive alimony. They further agreed to an allocation of the marital property between the parties, and that as a part of this division of property Gans would pay Schatz a total of $ 174,450, payable in monthly installments of $ 1,450 over a period of 121 months. At the time of this meeting both petitioners and their attorneys believed that the monthly payments were taxable to Schatz and deductible by Gans. Gurwin specifically explained these expected tax consequences to Schatz, and she was aware of them. [3] Both parties viewed this arrangement as beneficial--Schatz because the payments would not cease upon her remarriage or Gans' death, and Gans because the Circuit Court would not retain jurisdiction over the payments thereby precluding any upward adjustments in the amount being paid. *410 Immediately following this meeting the parties appeared before the Circuit Court and told the Court that they had reached a settlement. Gurwin explained to the Circuit Court the following: It would be appropriate to advise the court that our approach has been to enter into an agreement in which Mrs. Gans [Schatz] is to receive her share of the property over a period in excess of 120 months thereby complying with the provisions of the Internal Revenue Code to permit maximum tax advantages to the defendant husband. This is in lieu of other aspects of property which will be awarded to her husband. Neither party to receive alimony. Schatz also testified at this hearing and in response to questions from Gurwin answered as follows: Question: And do you understand that by the terms of the proposed property settlement that you will be forever barred from receiving alimony from your ex-husband? Answer: Yes. Question: And has it been carefully explained to you what it means and how it will affect you and what you will be getting [and] * * * the manner [in] which you would be getting it? Answer: Yes. on August 31, 1973, the parties filed in the Circuit *411 Court a Judgment of Divorce (the "Judgment") incorporating their agreement as explained to the Circuit Court on August 21, 1973. The Judgment provided: ALIMONY
IT IS FURTHER ORDERED that neither party shall receive alimony. PROPERTY SETTLEMENT
IT IS FURTHER ORDERED that the plaintiff shall receive the sum of One Hundred Seventy-five Thousand Four Hundred Fifty and 00/100 ($ 175,450.00) Dollars in lawful United States currency, said sum to be paid by the Defendant to her in monthly installments of One Thousand Four Hundred Fifty and 00/100 ($ 1,450.00) Dollars, beginning on October 1, 1973, and continuing for one hundred twenty-one (121) consecutive months. This payment to the Plaintiff by the Defendant is in lieu of her interest in other property being awarded to the Defendant as set forth herein. [4]
The other provisions of the property settlement portion of the Judgment divided the remainder of the marital estate between *412 Schatz and Gans. In addition to the payments listed above, Schatz received all of the household furniture, furnishings and appliances from the marital home, exclusive use of the marital home until October 1, 1974, her separate interest in Alberts Shopping Center located in Las Vegas, Nevada, a 1971 Cadillac, all her personal property (including two bank accounts and two life insurance policies having a cash surrender value of no less than $ 6,550), a loan of $ 25,000 from Gans to be repaid in five annual installments of $ 5,000 plus interest at five percent, and medical coverage for herself under Gans' Blue Cross-Blue Shield plan until she was able to secure other coverage. The property settlement further directed that Gans receive the marital home subject to existing encumbrances and subject to Schatz' exclusive use through October 1, 1974, his separate interest in Alberts Shopping Center, all cash on hand in various bank accounts titled in his own name or jointly with Schatz, all other personal property in his possession or under his control, a 1973 Lincoln Mark IV, a 1969 Pontiac Grand Prix, a 1967 Chevrolet Corvette, all right, title and interest in his stock in his professional *413 service corporation (Ophthalmology Associates, P.C.), all right, title and interest owned in Palmer Optical Co., Michigan Apartment Investors, and Kingswood Joint Venture, all of the interests of the parties in certain real estate situated in Pahrump, Nevada, any and all interest he might have in the profit sharing plans and pension plans of Opthalmology Associates and Palmer Optical, and two life insurance policies with an approximate cash surrender value of $ 2,450. Finally, as security for his obligation to make the monthly payments to Schatz required by the Judgment, Gans agreed to name Schatz as the beneficiary under the two life insurance policies he received. The monthly payments required by the property settlement are not subject to termination or adjustment upon the occurrence of the death of either Schatz or Gans, remarriage of Schatz or the changed financial circumstances of either party. Prior to the divorce Schatz and Gans jointly owned the marital home. They also jointly owned the Pahrump property, two savings accounts and all the household furniture, furnishings and appliances. Neither Schatz nor Gans brought any significant assets to the marriage. At no time *414 during their negotiations did the parties reach an agreement as to the value of the assets comprising the marital estate. [5] The Judgment does not assign values to these assets nor does it attempt to distribute them equally. The Judgment merely specifies which properties go to Schatz, which to Gans, and the sum of money to be paid by Gans to Schatz (which amount was deemed reasonable in light of all the circumstances including but not limited to, the property awarded to each party, the length of the marriage, Schatz' ability to earn a salary, the absence of alimony, and the contributions by each party towards the acquisition of the marital property). The parties did intend, however, that the Judgment would award Schatz more than one-half the value of the marital estate, taking into consideration the present value of the payments. *415 As part of the settlement incorporated in the Judgment Schatz released her inchoate dower rights in exchange for the payment of $ 1.00. The Judgment awarded custody of David Gans to Gans and Lisa Gans to Schatz. During 1976 Lisa was a full time student at the University of Michigan, and during the entire calendar year 1976 she resided in an apartment in Ann Arbor, Michigan, provided by Gans. After completing college Lisa moved to San Francisco. During 1976 Schatz resided in Southfield, Michigan. Lisa's absence from her mother's residence during 1976 was not temporary. On her 1973 and 1974 income tax returns Schatz reported the amounts paid to her by Gans pursuant to the Judgment as income. Schatz subsequently filed claims for refunds for those years claiming that she erroneously included these amounts in income. On her 1975 and 1976 income tax returns Schatz did not include in income any portion of the amounts paid to her by Gans. Schatz also claimed an earned income credit for 1976 on the basis that her home was Lisa's principal place of abode. Gans, on the other hand, deducted on his joint income tax returns all amounts paid to Schatz during the years 1974, 1975 and *416 1976. In his notices of deficiency respondent has taken the position of a stakeholder by including all of the disputed payments in Schatz's income and disallowing all of Gans' deductions for such payments. [6]
OPINION The first issue is whether Gans' monthly payments to Schatz are includible in Schatz' income under section 71. Section 71(a)(1)[7] requires Schatz to include in her income periodic payments received from Gans which are imposed on him by the Judgment and made because of the marital or family relationship. Section 215 (a)[8] permits Gans to deduct from his income amounts which are includible in Schatz' income under section 71. *417 There is no dispute but that the payments here in question are required under a decree of divorce and that they are periodic. [9] The only dispute is whether the payments were made by Gans in discharge of a legal obligation arising out of his marital or family relationship with Schatz. The regulations under section 71, the legislative history behind the enactment of the predecessors to sections 71 and 215, and the case law make it clear that payments in discharge of a legal obligation arising out of a marital or family relationship are payments for support or alimony or payments in lieu thereof. *418 Lambros v. Commissioner, 459 F. 2d 69, 71 (6th Cir. 1972); sec. 1.71-1(a) and (b)(4), Income Tax Regs.; H. Rept. No. 2333, 77th Cong., 2d Sess., 1942-2 C.B. 372, 427. We have pointed out in the past that Congress specifically chose not to use the terms support or alimony in an effort to obtain uniform treatment for similar payments regardless of how those payments are characterized by state law. [10] As we stated in Bishop v. Commissioner, 55 T.C. 720, 724-725 (1971): Significantly, the text of section 71 does not use the word "alimony" but refers to legal obligations which are imposed because of a marital or family relationship. The regulations amplify the statute by explaining that the section applies only to payments made because of such relationship and in recognition of the general obligation *419 of support. Sec. 1.71-1(b)(4), Income Tax Regs.; WilmaThompson, 50 T.C. 522, 528 (1968). In adopting the carefully chosen language of the section, Congress sought to deemphasize the importance of the standards of State alimony laws and to establish uniform treatment of "amounts paid in the nature of or in lieu of alimony regardless of variance in the laws of different States." H. Rept. No. 2333, 77th Cong., 2d Sess., 1942-2 C.B. 427; S. Rept. No. 1631, 77th Cong., 2d Sess. 1942-2 C.B. 568; Taylor v. Campbell,335 F. 2d 841, 845-846 (C.A. 5, 1964); Bardwell v. Commissioner,supra at 789 [318 F. 2d 786 (10th Cir. 1963)]; Soltermann v. United States, 272 F. 2d 387 (C.A. 9, 1959). Whether a set of payments is includible in income under section 71 depends on whether the payments are in the nature of support or alimony, or in lieu thereof. This inquiry is a question of fact to be resolved after an examination of all the surrounding facts and circumstances. *420 Wright v. Commissioner, 62 T.C. 377, 389 (1974), affd. 543 F. 2d 593 (7th Cir. 1976); Hesse v. Commissioner, 60 T.C. 685, 691 (1973), affd. without opinion 511 F. 2d 1393 (3rd Cir. 1975), cert. denied 423 U.S. 834 (1975). As a general rule, if a payment is not in the nature of support or alimony, or in lieu thereof, it is in exchange for some property right or interest. Property settlements are not includible in the wife's income nor deductible to the husband. As we pointed out in Warnack v. Commissioner, 71 T.C. 541, 550-551 (1979): A review of the cases in the "support" area reveals that the courts have not focused merely on whether the payments are for "support"--rather the approach has been to determine whether the payments are for support in contradistinction to being in exchange for the wife's release of some property interest. The question of whether a payment is in recognition of the husband's obligation of support (and is, therefore, made because of the marital or family relationship) is meaningful only if it is considered in connection with the question of whether the payments *421 are in recognition of and for the extinguishment of some property interest of the wife. * * * Thus, the courts examine a given payment with an eye to determining whether it is made for support or as part of a property settlement. [11]
The nature of the payments depends on the parties' intent as to the purpose for the payments. [12]Porter v. Commissioner, 388 F. 2d 670, 671 (6th Cir, 1968). The courts have isolated a number of factors to aid in this inquiry. [13]
*422 Factors tending to show that payments are for support include: (1) the absence of a fixed principal sum to be paid, Bardwell v. Commissioner, 318 F. 2d 786, 789 (10th Cir. 1963); (2) a decrease or termination of the payments on the occurrence of certain contingencies (e.g., death of either party, remarriage of payee, change in financial circumstances, etc.), McCombs v. Commissioner, 397 F. 2d 4, 7 (10th Cir. 1968); (3) an equal division of marital property (without taking into consideration the periodic payments), Warnack v. Commissioner, supra at 552; (4) the relinquishment of a right to support for which no apparent separate consideration has been given, Nathan v. Commissioner, 19 T.C. 865, 872 (1953); and (5) a relationship between the payments and the amount of temporary support payments made by the payor during the period of separation, Nathan v. Commissioner, supra at 871-872. On the other hand, factors tending to show that the payments are really in the nature of a property settlement include: (1) the existence of a recognizable property interest under state law, *423 Harrah v. Commissioner, 70 T.C. 735, 748-749 (1978); (2) the existence of a fixed principal sum that must be paid, Land v. Commissioner, 61 T.C. 675, 683 (1974); (3) that the payments are not related to the payor's income, Land v. Commissioner, supra; (4) that the payments do not cease or decrease on the occurrence of certain contingencies, Land v. Commissioner, supra; (5) whether the amount paid approximately equals one-half of the property accumulated by the parties during marriage, Lambros v. Commissioner, supra at 71-72; (6) whether consideration is given to the needs of the recipient in determining the amount to be paid, McCombs v. Commissioner, supra at 7; and (7) whether the payments are secured, McCombs v. Commissioner, supra at 8. The above factors are merely representative of those to be considered when determining whether certain payments are alimony or part of a property settlement. Furthermore, even in circumstances where the above indicia support one or the other conclusion, courts have reached contrary results after considering the *424 overall circumstances. See e.g., Wright v. Commissioner, supra; Hesse v. Commissioner, supra.[14]
In the present case, neither Schatz nor Gans have shown whether Schatz had a property interest for which the payments were designed as compensation. Moreover, even if a recognizable property interest exists, the parties never reached an accord either on the value of the marital estate at the time of the divorce or on the value of the separate property interests Schatz had in the marital property. The evidence introduced at trial is insufficient to permit us to determine these values or rights. The failure to value these rights must not bestow a windfall on either of the parties. The general rule is that the intent of the parties is controlling. Based on a review of the negotiations preceding the divorce and an evaluation of the other factors, we find that the monthly payments here in question are of a dual nature--that is, they are partly alimony and partly a property settlement. We have held in the past on several occasions under circumstances *425 similar to those present here that periodic payments from one spouse to the other were part alimony and part property settlement. Hayutin v. Commissioner, 508 F. 2d 462 (10th Cir. 1974), affg. a Memorandum Opinion of this Court; Bishop v. Commissioner, supra; Watkins v. Commissioner, 53 T.C. 349 (1969). These cases concluded that, in light of the facts and circumstances involved in the negotiations leading up to the payment arrangement and in light of the rights of the parties under state law, the parties lumped together payments for both property and support rights. While these cases obviously have different fact patterns, we are convinced their underlying theories apply equally to the present case. Based on Gurwin's testimony that the payments were in lieu of alimony [15] and on the fact that Schatz relinquished without consideration her right to alimony, we find that the payments were partly in lieu of Gans' marital obligation of support. [16] We also find that the payments were partly a property settlement. This finding is based upon Shepherd's testimony that his initial position was that the marital assets should be divided *426 evenly between Schatz and Gans, and on the facts that the Judgment called for the payment of a sum certain, that the payments were unaffected by the occurrence of contingencies or by fluctuations in Gans' income, and that the payments were in part secured by two life insurance policies. [17] Thus the payments have a dual character and we must determine what part of each payment is alimony and what part is property settlement. [18]
*427 Neither of the petitioners in this case briefed the question of how to allocate the payments if they were of dual character. In Hayutin v. Comissioner, supra, and Bishop v. Commissioner, supra, we allocated the payments between property settlement and alimony based on the amount of temporary support paid during the pendency of the divorce. In Watkins v. Commissioner, supra, we held that the amount attributable to property equalled the amount the husband had to pay regardless of the wife's remarriage. We then produced a fraction equal to the ratio that that amount bore to the total amount which would be paid if the wife did not remarry, and applied that fraction to each payment to determine the amount of each payment allocable to property. The remainder was allocated to alimony. In the present case respondent suggests that we take an approach similar to that used in Hayutin and Bishop. Specifically respondent suggests that an amount representing the annual amount of alimony can be calculated by adding the following two figures: (1) The amount of temporary support Gans would be required to pay on an annual basis under *428 the terms of the Circuit Court's Order for Temporary Relief (i.e., 52 weekly payments of $ 200, or $ 10,400). (2) One-tenth of the amount attributable to the income tax adjustment (i.e., $ 20,000 divided by 10 years, or $ 2,000). According to respondent's theory, the sum of these two amounts ($ 12,400) constitutes the portion of each year's total payments ($ 17,400) attributable to alimony, and the balance ($ 5,000) represents property settlement. While we are aware that this approach is not unlike a brain surgeon using a butcher knife, we adopt it nonetheless for the lack of evidence supporting a more accurate division of the payments. The second issue is whether Schatz was entitled to an earned income credit in 1976. Schatz has not argued on brief that she is so entitled, and we assume that she has abandoned this claim. Nevertheless, under the facts in this case we find as a matter of law that Schatz was not entitled to an earned income credit in 1976. Section 43(a)[19] provides an earned income credit for certain "eligible individuals" (as defined in section 43(c)(1)(A)). For our purposes, Schatz is an "eligible individual" entitled to the earned income credit *429 only if her home constituted Lisa's principal place of abode during 1976. Sec. 43(c)(1)(A)(iii); sec. 2(b). Section 1.2-2(c)(1), Income Tax Regs., provides in part: The taxpayer and such other person will be considered as occupying the household for such entire taxable year notwithstanding temporary absences from the household due to special circumstances. A nonpermanent failure to occupy the common abode by reason of illness, education * * * shall be considered temporary absence due to special circumstances. Such absence will not prevent the taxpayer from being considered as maintaining a household if (i) it is reasonable to assume that the taxpayer or such other person will return to the household, and (ii) the taxpayer continues to maintain such household or a substantially equivalent household in anticipation of such return. During 1976 Lisa resided in an *430 apartment in Ann Arbor for the entire calendar year, not just while attending the University of Michigan. Lisa's absence from Schatz' home was not temporary, there was no reasonable basis to assume that she would return to her mother's residence and, in fact, she did not return to her mother's residence. Lisa's principal place of abode during 1976 was Ann Arbor. Accordingly, Schatz is not entitled to an earned income credit for 1976. Cf. Blair v. Commissioner, 63 T.C. 214 (1974), supp. opinion 63 T.C. 744 (1975), affd. 538 F. 2d 155 (7th Cir. 1976) (the taxpayer's son who attended a preparatory school for emotionally disturbed children was only temporarily absent from the taxpayer's household). Footnotes
1. All section references are to the Internal Revenue Code of 1954 as in effect during the years in issue, unless otherwise stated.↩
2. Susan J. Gans is a party to this case solely by virtue of having filed a joint return with her husband.↩
3. Schatz testified that she did not recall whether Gurwin explained the expected tax consequences to her, but Gurwin, Shepherd and Gans and testified that the tax consequences were discussed and explained at this meeting. Furthermore, Gurwin testified that he explained the understanding of the parties to Schatz. Accordingly, we find that Schatz was aware of the anticipated tax consequences.↩
4. The evidence is insufficient to determine exactly how the $ 175,450 figure was reached by the parties. It is clear, however that of the total $ 20,000 was to compensate Schatz for the fact that she would be paying income taxes thereon.↩
5. Among the exhibits introduced in this case were a set of interrogatories served on Gans during the divorce action and his answers thereto. These interrogatories were designed to elicit all of the marital property and their values. Also introduced was a letter from Shepherd to Gans in which Shepherd lists values allegedly placed on the marital property by Gurwin. While a ball park estimate for the value of some of the marital property might be gleaned from these exhibits, these exhibits do not establish an agreed upon value for the marital property.↩
6. On brief, however, respondent takes the approach that the payments really are of a dual nature, and that part of Gans' deductions should be allowed, and part of Schatz' exclusions should be permitted.↩
7. Section 71(a)(1) provides: If a wife is divorced or legally separated from her husband under a decree of divorce or of separate maintenance, the wife's gross income includes periodic payments * * * received after such decree in discharge of * * * a legal obligation which, because of the marital or family relationship, is imposed on or incurred by the husband under the decree or under a written instrument incident to such divorce or separation. ↩
8. Sectio 215(a) provides: In the case of a husband described in section 71, there shall be allowed as a deduction amounts includible under section 71↩ in the gross income of his wife, payment of which is made within the husband's taxable year.
9. These payments meet the safe harbor for periodic payments found in section 71(c)(2), which provides: If, by the terms of the decree, instrument, or agreement, the principal sum referred to in paragraph (1) is to be paid or may be paid over a period ending more than 10 years from the date of such decree, instrument, or agreement, then (notwithstanding paragraph (1)) the installment payments shall be treated as periodic payments for purposes of subsection (a), but (in the case of any one taxable year of the wife) only to the extent of 10 percent of the principal sum.↩
10. When Congress first enacted sections 71 and 215↩ it did not anticipate the litigation which has arisen over whether certain payments were made in discharge of a legal obligation arising out of a marital or family relationship. It is time for Congress to reconsider this statute and perhaps supply taxpayers with a safe harbor in this area.
11. It should be remembered that merely because a payment is not in recognition of, and for the extinguishment of, some property interest that it is not necessarily includible in the recipient's income under section 71. A payment which is clearly in the nature of support or alimony or in lieu thereof which is either not a periodic payment or fails to meet the other requirements of section 71 is not includible in the recipients' income under section 71↩.
12. The parties' intent that the payments be deductible by the payor is not relevant. Federal tax law in this area is not concerned with the tax treatment the parties intended to reach; rather, the law is concerned only with the intended purpose behind the payment. That purpose controls the tax treatment of the payments. See Schottenstein v. Commissioner, 75 T.C. 451, 457 (1980), on appeal (6th Cir. June 12, 1981). Moreover, the label attached by the parties is not controlling. Hesse v. Commissioner, 60 T.C. 685, 691 (1973); Bishop v. Commissioner, supra↩ at 724. 13. Many of these factors are discernable from the negotiations preceding the divorce. Hesse v. Commissioner, supra↩ at 692.
14. See also Roberts v. Commissioner,T.C. Memo. 1974-175↩ (1974).
15. Gurwin specifically testified that he thought the amount of the property settlement awarded to Schatz should be in excess of one-half of the value of the marital assets because, among other things, Schatz would not be receiving any alimony. ↩
16. Michigan does not necessarily require one party to a divorce to make alimony or support payments to ther other. Rather, under Michigan law each party is entitled to have the divorce court restore to him his interest in the marital property or a payment in exchange therefor. Mich. Comp. Laws § 552.19 (Mich. Stat. Ann. § 25.99 (Callaghan (1974)). Then, upon a finding that the real and personal property otherwise awarded would be insufficient for the suitable support and maintenance of the party or the children, Michigan permits an allowance for alimony or an adjustment to the property division to compensate for the additional support and maintenance requirements of the party. Such an allowance for alimony or further division of the marital property must be just and reasonable in light of the surrounding facts and circumstances. Mich. Comp. Laws § 552.23(1)↩ (Mich. Stat. Ann. § 25.103(1) (Callaghan 1974)). We believe that a Michigan court, if requested, would have awarded Schatz alimony, and it is clear from Gurwin's testimony that he also thought she was entitled to alimony under state law. 17. In addition, under Michigan law Schatz had dower rights, Mich. Comp. Laws § 558.1 (Mich. Stat. Ann. § 26.221 (Callaghan 1974), which must be fully satisfied upon divorce by the inclusion in the decree of a provision dealing therewith, Mich. Comp. Laws § 552.101↩ (Mich. Stat. Ann. § 25.131 (Callaghan 1974)). In the present case, the payment of $ 1.00 in satisfaction of Schatz' dower rights was merely perfunctory. We believe that Schatz' dower rights were much more valuable and actually compensated for by the payments received from Gans under the property settlement. 18. Schatz also argued that she had an equitable property interest in the marital estate under Michigan law. In reliance on this theory Schatz refers us to Mich. Comp. Laws § 552.19 (Mich. Stat. Ann. § 25.99) (Callaghan (1974)), and cites Johnson v. Johnson, 346 Mich. 41878 N.W.2d 216 (1956), as the leading Michigan case supposedly interpreting that statute. Under this theory Schatz is attempting to analogize her position with that of the taxpayer-wife in Gammill v. Commissioner, 73 T.C. 921 (1980). We find Schatz' argument unpersuasive. First, Gammill involved Oklahoma law where property acquired during marriage is treated somewhat like community property. In Oklahoma a wife's interest in marital property vests upon divorce. We are unaware of any similar statutory or case law in Michigan. Second, Schatz' reliance on § 552.19, supra, is misplaced. As we already stated in note 17, supra, § 552.19 merely requires the restoration to each spouse of his separate property upon divorce. Michigan courts may, after such restoration, further adjust the property division within the limits of the applicable statutes. Charlton v. Charlton, 397 Mich. 84, 92, 243 N.W. 2d 261, 265 (1976). For our purposes, the applicable statute is Mich. Comp. Laws § 552.23(1) (Mich. Stat. Ann. § 25.103(1) (Callaghan 1974)), which permits a further adjustment to the property settlement when necessary "for the suitable support and maintenance of either party * * *." This is an award which is in lieu of alimony and not an equitable interest in the marital property similar to that in Gammill. Finally, Johnson v. Johnson, supra, does not interpret § 552.19, supra, as Schatz contends, but rather deals with § 553.23(1), supra. In interpreting that later statute the Michigan Supreme Court in Johnson v. Johnson stated: The portion of property awarded to each party depends upon all the equitable factors involved, including the following: source of property, contribution towards its acquisition, the years of married life, the needs of the parties, their earning ability and also the cause for divorce. 346 Mich. at 431, 78 N.W. 2d at 222. This language merely indicates that Michigan courts examine all the equitable facts and circumstances when determining what constitutes suitable support and maintenance and whether an additional adjustment in the property division is necessary to provide for such support and maintenance. Neither the language of Johnson v. Johnson↩ nor the applicable Michigan statutes create an equitable property interest in Schatz similar to that of spouses in Oklahoma.
19. Section 43(a), as in effect for the year in issue, provided: In the case of an eligible individual, there shall be allowed as a credit against the tax imposed by this chapter for the taxable year an amount equal to 10 percent of so much of the earned income for the taxable year as does not exceed $ 4,000.↩