BEVERLEY P. ADDISON, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Addison v. Commissioner
Docket No. 30300-89
United States Tax Court
T.C. Memo 1992-349; 1992 Tax Ct. Memo LEXIS 370; 63 T.C.M. (CCH) 3157; June 18, 1992, Filed *370 Decision will be entered pursuant to Rule 155. Beverley P. Addison, pro se. James Hogan, for respondent. BUCKLEY
BUCKLEY
MEMORANDUM OPINION BUCKLEY, Special Trial Judge: This case was assigned pursuant to the provisions of section 7443A(b)(3) and Rules 180, 181, and 182. [1] Respondent determined a deficiency in petitioner's 1985 Federal income tax in the amount of $ 1,412, together with additions to tax under section 6653(a)(1) in the amount of $ 70.60, and under 6653(a)(2) in the amount of 50 percent of the interest due on the entire deficiency. The issues for decision are: (1) Whether petitioner is entitled to deduct certain employee business expenses; (2) whether petitioner discontinued the business use of her Cadillac automobile in 1985 so that she must recapture an investment tax credit and section 179 expenses claimed in *371 1984 on the automobile, as well as compute depreciation on a straight line basis; (3) whether petitioner's daughter, Angela, resided with her so that she is entitled to a filing status of head of household; (4) whether unemployment insurance received by petitioner is includable in her gross income; (5) whether petitioner is entitled to a single filing status; and (6) whether petitioner was negligent in filing her 1985 tax return. Some of the facts are stipulated and they are so found. Petitioner resided in Memphis, Tennessee, when she filed her petition herein. Petitioner was employed by the Internal Revenue Service (IRS) in Memphis, Tennessee, in 1971. During that same year, petitioner was divorced from her first husband. That marriage resulted in two children, James, born in 1968, and Angela, born in 1971. During 1975, the IRS transferred petitioner from Memphis to Birmingham, Alabama. Petitioner married Carlton Addison during 1975. She gave birth to a daughter, Carlyn, in 1976. Petitioner and her husband, along with her three children, resided at 818 Cochise Trail in Birmingham, Alabama, from 1975 to 1979. That residence was, and continues to the date of trial, to be owned *372 jointly by petitioner and her husband, Mr. Addison. The IRS promoted petitioner in 1979 to the position of Internal Revenue agent in the Nashville District, with her post of duty at Memphis. She then moved to Memphis with her daughters Angela and Carlyn. Her husband, Carlton Addison, and James, her son, remained at the Birmingham residence. Carlyn returned to Birmingham during December of 1984 to live with Mr. Addison. (Petitioner had been receiving medical treatment throughout 1983 and 1984.) We consider relevant facts and law separately for each of the issues for purposes of clarity. Cadillac business expenses, investment credit recapture, depreciation disallowance, and section 179 recapture. Petitioner bought a Cadillac automobile on August 29, 1984, which she used in her trade or business as a revenue agent with the Internal Revenue Service. The business use of her automobile declined substantially during 1985. Respondent, in the notice of deficiency, determined "you ceased using your vehicle for business purposes within one year of placing it in service. Accordingly, 100 percent of the investment credit claimed must be recaptured." Petitioner had claimed a credit *373 of $ 602 for the preceding year. Respondent also disallowed the entire depreciation deduction claimed for 1985. As to these items, petitioner bears the burden of proof. Rule 142(a); Welch v. Helvering, 290 U.S. 111 (1933). Respondent, by amendment to her Answer, asserted that petitioner was also liable to recapture the deduction taken in 1984 under the provisions of section 179. As to this issue, respondent bears the burden of proof. Rule 142(a). Petitioner used the Cadillac in her business as an Internal Revenue agent after its purchase in 1984 and during 1985. She also used it for personal purposes. During 1985, the automobile was driven 6,469 miles. Petitioner was hospitalized from January 5, 1985, until February 22, 1985. She returned to work with the IRS in March 1985. She submitted travel vouchers for business mileage to the IRS through May 1985, for a total of 587 miles, and was so compensated. In May of 1985, the IRS terminated petitioner's employment. Since petitioner was unemployed during the balance of the year, she did not utilize the Cadillac for her trade or business of being an employee of the IRS. She did, however, utilize the vehicle *374 during that year in her efforts (which were ultimately successful) in appealing her employment termination. Her attempt to have the termination overturned and resume her employment with the IRS became, in effect, her trade or business. See, e.g., Cremona v. Commissioner, 58 T.C. 219 (1972). Petitioner did not, however, maintain records on the mileage pursued in this endeavor, and she was thus unable to prove that she utilized the vehicle predominately for business purposes during 1985. We consider the facts surrounding petitioner's termination from her position as an Internal Revenue agent. Petitioner was removed, effective May 24, 1985, from her position with the IRS for allegedly unacceptable job performance. She appealed the removal to the Merit Systems Protection Board (the Board) at its St. Louis Regional Office. That Board reversed the removal on October 11, 1985, holding that petitioner's removal was the result of reprisals against her because of grievances she filed under a negotiated agreement procedure and Equal Employment Opportunity (EEO) complaints, as well as personal animus toward her. Both situations are prohibited personnel practices. *375 The IRS was ordered to cancel petitioner's removal and to award back pay and benefits. Before that decision became final, however, the IRS filed a petition for review to the Merit Systems Protection Board in Washington, D.C. (hereafter MSPB). The MSPB upheld the Board's original holding and ordered cancellation of petitioner's removal on July 11, 1986. Thereafter, the IRS petitioned for review of the 1986 decision, and that was denied, with the IRS ordered to cancel the removal and to restore retroactively petitioner effective May 24, 1985. As of the time of trial in this Court, petitioner was employed as an Internal Revenue agent in Washington, D.C.
Petitioner, while employed as an Internal Revenue agent, was required to use her personal vehicle for business purposes. She used it predominately for business purposes during 1984. For most of 1985, she was unable to so use her vehicle because of her removal from her position as a result of prohibited personnel practices by the IRS. Absent her removal from her position, petitioner would have most probably continued to utilize the vehicle predominately for business purposes. Unfortunately, for the period of her removal from her *376 position in 1985, petitioner did not maintain records of her business use of her automobile and at trial was unable to prove that she utilized the vehicle predominatly for business purposes. For 1985, petitioner claimed total nonreimbursed employee business expenses of $ 2,202, all of which respondent disallowed. As we understand it, respondent's position is that petitioner was reimbursed by the IRS for her oil, gasoline, and other out-of-pocket costs, so she was not entitled to any further deductions based on the mileage she claimed for the period prior to her termination. Respondent conceded during trial that petitioner is entitled to at least 9 percent depreciation on the automobile for 1985. Of the total $ 2,202 of expenses claimed, $ 1,868 consisted of depreciation. Petitioner did not present evidence supporting other automobile business expenses, so as to these items she has failed to sustain her burden of proof, and respondent's disallowance is upheld. Petitioner's deduction for depreciation is controlled by section 280F(b)(3) which provides that where listed property is predominantely used in a qualified business use in a taxable year in which it is placed in service, *377 and is not so used for any subsequent year, then the recovery deduction in the subsequent year shall be determined under the straight line method. Section 280F(b)(4)(A) provides that "Property shall be treated as predominantly used in a qualified business use for any taxable year if the business use percentage for such taxable year exceeds 50 percent." Although the title of the section refers to luxury automobiles, in fact its provisions apply to any passenger automobile. Since petitioner failed to prove that business use of the automobile exceeded the 50-percent requirement in 1985, she may take depreciation in 1985 only on a straight line basis at the percentage conceded by respondent since she has not proved any greater amount. We now consider the investment credit recapture. Section 47 provides, in general, if any section 38 property (investment credit property) is disposed of, or otherwise ceases to be section 38 property with respect to the taxpayer, before the close of the useful life which was taken into account in computing the credit under section 38, there shall be a recapture of the investment credit. Respondent conceded at trial herein that there was no such cessation *378 of business use during 1985, but argues that the provisions of sections 47 and 280F control to require recapture of the investment credit. Respondent determined that petitioner had a recapture of the $ 602 claimed as an investment credit in 1984. Section 47(a) provides a general rule of recapture for section 38 property which has ceased to be section 38 property in a subsequent year. Section 1.280F-3T(b)(2), Temporary Income Tax Regs., 49 Fed. Reg. 42701 (Oct. 24, 1984), provides that listed property ceases to be section 38 property to the extent that the business use for any taxable year is less than the business use for the year in which the property is placed in service. If the business use of listed property is less than or equal to 50 percent for any subsequent taxable year, that property ceases to be section 38 property in its entirety in that subsequent taxable year, and there is a recapture under section 1.47-1(c)(1)(ii)(b), Income Tax Regs. Accordingly, petitioner must recapture in 1985 the investment credit claimed in 1984 since she failed to prove that she utilized the vehicle predominately for business purposes during 1985. The section goes on to *379 provide for coordination with section 179. Thus, section 280F(d)(1) provides that any deduction allowable under section 179 with respect to any listed property shall be subject to the limitations of section 280F(b) in the same manner as if it were a recovery deduction allowable under section 168. Section 1.280F-3T(d)(2), Temporary Income Tax Regs., 49 Fed. Reg. 42701 (Oct. 24, 1984), provides that the section 179 deduction will be recaptured. Petitioner claimed a deduction under section 179 in regard to the Cadillac on her 1984 Federal income tax return. By amendment to her answer, respondent asserted that petitioner must recapture this amount also. Respondent raised this issue in her amended answer and accordingly bears the burden of proof on this issue. Rule 142(a). Section 179 allows a taxpayer to elect to treat the cost of any section 179 property as an expense which is not chargeable to capital account. Petitioner's Cadillac constituted section 179 property in 1984, and petitioner claimed an expense deduction of $ 2,000 on her return for that year. Section 179(d)(10) provides for recapture of the benefit of the expense deduction "with respect to any property *380 which is not used predominantly in a trade or business at any time before the close of the second taxable year following the taxable year in which it is placed in service by the taxpayer." Section 1.179-1(e)(2), Income Tax Regs., interprets the term "predominately" to mean 50 percent or more of the use of the property is in a trade or business. Petitioner credibly testified during the course of the trial herein that she utilized the automobile, after she was terminated, to attend meetings with her union in regard to her appeal of the termination and to appear at the hearings. She went on to testify that she was so upset by the job situation in which she found herself that she did not keep a record of those miles. We believe petitioner. Respondent, who bears the burden of proving that petitioner used the automobile less than 50 percent for business during 1985, chose not to question petitioner on this matter, or to present any evidence in connection with it. Respondent apparently relied solely upon the business mileage petitioner claimed on her Federal tax return to support the allegations claimed in respondent's amended answer. Respondent has failed to meet her burden of proof *381 on this issue, and we hold petitioner is not required to recapture the section 179 deduction. Rule 142(a). Petitioner argued that it was inequitable for respondent to take the position she takes in this matter, since it was respondent's actions in terminating petitioner that caused her business use of her automobile to fall. Petitioner argues that her business use would have been over 50 percent were it not for her improper termination by the IRS, and that accordingly it is unfair for her to be so penalized. Petitioner goes on to argue that her 1985 tax year terminated in May as a result of the IRS action, and, that accordingly, as of that date her use of the automobile was predominantly for business. We find no authority for petitioner's "short-year" argument. Sec. 7701(a)(23). While we agree that petitioner's business use would probably have met the standard of the statute in regard to percentage of business use were it not for the improper termination of her services, we find no exception in the statute into which petitioner's situation might fit. (Notwithstanding the improper termination, petitioner's business use could have met the standard of the statute, but *382 petitioner failed to carry her burden of proof.) We are not a court of equity, and we must follow the language of the statute. Lorain Avenue Clinic v. Commissioner, 31 T.C. 141, 164 (1958). The statutory language is clear and it indicates, and we hold, that based on the record in this case the investment credit must be recaptured and depreciation restricted to a straight line basis. We note that adjustments made to basis of the Cadillac because of the investment credit taken must be added back to petitioner's cost basis for purposes of computing her straight line depreciation deduction. Head-of-Household filing status. Petitioner's daughter Angela had previously returned to Birmingham in December 1983 in order to attend the Alabama School of Fine Arts (hereafter Fine Arts), an accredited public school in Birmingham. Angela's acceptance at Fine Arts was based upon her audition, references, and scholastic achievements. While attending Fine Arts, Angela resided at 818 Cochise Trail in Birmingham, the home owned by petitioner and Mr. Addison, who was Angela's stepfather. Dormitory space at Fine Arts was limited. Mr. Addison maintained the household *383 in Birmingham, whereas petitioner maintained the household in Memphis. Angela attended Fine Arts from January of 1984 through her graduation in 1989. During that entire period, Angela's home address, as listed on Fine Art's records, was 818 Cochise Trail, Birmingham. Fine Arts offered free tuition to accepted students who were residents of the State of Alabama during 1985. A matriculation fee and other charges were assessed all students enrolled at Fine Arts. Students who were not Alabama residents were charged an out-of-state tuition fee of approximately $ 1,000 per semester. A tuition fee was not paid on behalf of Angela. Angela spent her vacations with petitioner, either in Memphis, Birmingham, or Florida where they had relatives. Petitioner was unable to remember where Angela spent her winter vacation in 1985. During 1985 petitioner made frequent trips to Birmingham as she had since 1979. When in Birmingham, she stayed at 818 Cochise Trail. Petitioner claims she is entitled to head-of-household status because of her daughter Angela. It is agreed that Angela was petitioner's dependent. As relevant herein, section 2(b) defines the term "Head of Household" as (1) an *384 individual who is not married at the close of the taxable year, (2) who maintains a household which constitutes for more than one-half of such taxable year the principal place of abode, as a member of such household, of a daughter, and (3) who is a dependent of the taxpayer. Petitioner must prove that she meets all the requirements of the statute. We consider whether Angela's principal place of abode was with petitioner in Memphis. Petitioner argues that Angela was absent from home in Memphis only for purposes of her education in Alabama. She stresses that Angela's training in ballet was enhanced by her matriculation at Fine Arts, and that she was entitled to send Angela there by reason of the fact Angela had previously been enrolled in Alabama schools, and petitioner and Mr. Addison owned a home in Alabama. Section 1.2-2(c)(1), Income Tax Regs., provides: The taxpayer and such other person will be considered as occupying the household for such entire taxable year notwithstanding temporary absences from the household due to special circumstances. A nonpermanent failure to occupy the common abode by reason of illness, education, business * * * shall be considered temporary *385 absence due to special circumstances. Such absence will not prevent the taxpayer from being considered as maintaining a household if (i) it is reasonable to assume that the taxpayer or such other person will return to the household, and (ii) the taxpayer continues to maintain such household or a substantially equivalent household in anticipation of such return. Under these circumstances we find that Angela's absence from the household in Memphis was not temporary in nature. The intention clearly was that Angela continue her schooling at Fine Arts in Birmingham, and that she continue to reside there with her stepfather, Mr. Addison. It was not, therefore, reasonable for petitioner to assume that Angela would be returning to her household. Further, the record is unclear, and petitioner has failed to prove that Angela in fact returned to petitioner's household during school vacations. Cf. Blair v. Commissioner, 63 T.C. 214 (1974), affd. 538 F.2d 155 (7th Cir. 1976). We hold that petitioner's Memphis household was not the principal abode of Angela, and petitioner is not entitled to file as head of household. Unemployment insurance. Respondent *386 increased petitioner's adjusted gross income in the amount of $ 3,120 for unemployment compensation received by petitioner. Petitioner contends that she did not receive unemployment compensation and adjusted gross income in excess of her base amount. Section 85 provides, in general, if the sum of a taxpayer's modified adjusted gross income and unemployment compensation exceeds a base amount, gross income for the taxable year includes some portion of unemployment compensation. The base amount for a taxpayer who is married at the close of the year, but does not file a joint return for such year, and who does not live apart from her spouse at all times during the taxable year is zero. The question to be decided is whether petitioner lived apart from Mr. Addison at all times during 1985. Section 1.85-1(b)(4), Income Tax Regs., provides as follows: A taxpayer does not "live apart" from his or her spouse at all times during a taxable year if for any period during the taxable year the taxpayer is a member of the a household as such taxpayer's spouse. A taxpayer is a member of a household for any period, including temporary absences due to special circumstances, during which the *387 household is the taxpayer's place of abode. * * * The home in Birmingham occupied by Mr. Addison and the children was not petitioner's place of abode during any part of 1985. Her place of abode was located in Memphis. Petitioner lived apart from Mr. Addison at all times during 1985. Sec. 85(b)(1). Accordingly, the base amount for petitioner for purposes of determining the includability of unemployment compensation is $ 12,000. Petitioner's filing status. Petitioner was not legally separated or divorced from Mr. Addison during 1985. Unless she meets the requirements of section 143(b), pertaining to certain married individuals living apart, she must utilize a filing status of married filing separate. Section 143(b)(1) provides that an individual shall not be considered as married, if, inter alia, such person maintains as her home a household which constitutes for more than one-half of the taxable year the principal abode of a child. As we discussed earlier, we have held that Angela's principal abode was not with petitioner. Accordingly, petitioner's correct filing status is married filing separately. Negligence. We turn now to respondent's determination that petitioner *388 was negligent in filing her return. Respondent determined that petitioner was liable for additions to tax for negligence under section 6653(a)(1) and (2). Negligence under section 6653(a) is lack of due care, or failure to do what a reasonable and ordinarily prudent person would do under the circumstances. Neely v. Commissioner, 85 T.C. 934, 947 (1985). Respondent's determination that petitioner's underpayment of tax was due to negligence or intentional disregard of rules and regulations is "presumptively correct and must stand unless the taxpayer can establish that he was not negligent." Hall v. Commissioner, 729 F.2d 632, 635 (9th Cir. 1984), affg. T.C. Memo. 1982-337. Petitioner therefore bears the burden of proving that she is not liable for the additions to tax. Rule 142(a); Bixby v. Commissioner, 58 T.C. 757, 791 (1972); Enoch v. Commissioner, 57 T.C. 781, 802 (1972). Petitioner has borne her burden in the instant case. We arrive at this conclusion notwithstanding the fact that petitioner is an Internal Revenue agent presumably with more than general knowledge of the provisions *389 of the Code. To give effect to the foregoing, Decision will be entered pursuant to Rule 155. Footnotes
1. Unless otherwise indicated, section references are to the Internal Revenue Code in effect for the year at issue; Rule references are to the Tax Court Rules of Practice and Procedure.↩